UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

**Aurel Smith,**

**Plaintiff,**

        **-v-**                                           **9:07-CV-1150 NAM/ATB)**

**Dale Artus, Linda Turner, Brian Fischer, Kenneth Perlman, Mark Leonard, Norman Bezio, R. Rock, Karen LaPolt, Cheryl Morris, Jeff McKoy, and Anthony Annucci,**

**Defendants**.

◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

APPEARANCES:

Hughes Hubbard and Reed LLP
Karen L. Goldberg, Esq., of counsel
1 Battery Park Plaza
New York, New York 10004
Attorney for Plaintiff

Hon. Eric T. Schneiderman, Attorney General of the State of New York
Christopher W. Hall, Esq., Assistant New York State Attorney
The Capitol
Albany, New York 12224
Attorney for Defendants

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

      Defendants move (Dkt. No. 177) for summary judgment.[1]  In his counseled second

---

[1] By Memorandum-Decision and Order dated November 8, 2013 (Dkt. No. 150), this Court terminated Norman Bezio and Rick Woods as defendants; granted plaintiff's motion (Dkt. No. 139) to dismiss his state law claims without prejudice; and dismissed on the ground of qualified immunity all personal capacity claims alleging denial of the right to engage in demonstrative prayer in the yards, insofar as those claims are based on events occurring prior to July 18, 2008.

amended complaint (Dkt. No. 137), filed on August 16, 2013, plaintiff, an inmate in the custody

of New York Department of Corrections and Community Supervision ("DOCCS"), brings claims

under 42 U.S.C. § 1983 ("section 1983") and the Religious Land Use and Institutionalized

Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*., alleging that at various times beginning in

September 2005, he was wrongfully prevented from engaging in demonstrative prayer in the

recreation yard at various New York State correctional facilities in which he was incarcerated.

As the Second Circuit has noted, DOCCS has a statewide policy banning inmate demonstrative

prayer in prison recreation yards during recreation time.  *Smith v. Artus*, 522 F.App'x 82, 84 (2d

Cir. 2013).  The second amended complaint sets forth three causes of action: a RLUIPA claim; a

First Amendment free exercise claim under section 1983; and an equal protection claim under

section 1983.  Plaintiff requests declaratory, injunctive, and monetary relief.

    As explained below, the Court denies summary judgment dismissing plaintiff's claims for

prospective declaratory and injunctive relief under the Free Exercise Clause and RLUIPA against

defendants Dale Artus, Superintendent of Clinton Correctional Facility; Cheryl Morris, Director

of Ministerial and Family Services; Jeff McKoy, Deputy Commissioner of Program Services of

DOCCS; and Anthony Annucci, Acting Commissioner of DOCCS.  The Court grants summary

judgment dismissing with prejudice all other claims against all other defendants.

## BACKGROUND

    In his *pro se* amended complaint (Dkt. No. 6) and supplemental complaint (Dkt. No. 38),

plaintiff, a Muslim inmate in DOCCS custody, claimed that he was wrongfully prohibited from

engaging in demonstrative prayer in the prison yard during his designated recreation period while

incarcerated in Clinton Correctional Facility ("Clinton") between September 2005 and September

2007, and at Great Meadow Correctional Facility ("Great Meadow") between February 25, 2008 and July 18, 2008. He further claimed he was wrongfully denied the opportunity to attend congregate prayer services while confined in the Special Housing Unit ("SHU") at Upstate Correctional Facility ("Upstate") from November 7, 2007 to February 22, 2008. The amended and supplemental complaints asserted causes of action under section 1983 alleging infringement of plaintiff's constitutional rights under the Free Exercise and Establishment Clauses of the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment. The pleadings also asserted claims under RLUIPA and state law. The amended complaint named Dale Artus and Linda Turner as defendants. The supplemental complaint added defendants Brian Fischer, Kenneth Perlman, Mark Leonard, Norman Bezio, Rick Woods, R. Rock, and Karen LaPolt. In the amended complaint, plaintiff requested monetary, declaratory, and injunctive relief; in the supplemental complaint, he requested only monetary relief.

Defendants moved (Dkt. No. 87) for summary judgment. In response, plaintiff moved (Dkt. No. 91, par.6) to withdraw all claims under the Establishment Clause, the Equal Protection Clause, RFRA, and state law, and sought summary judgment in his favor on the remaining claims.[2] Plaintiff also moved (Dkt. Nos. 105, 109) for injunctive relief. In its Memorandum-Decision and Order dated September 30, 2010 (Dkt. No. 112), this Court ruled on the motions as follows: dismissed with prejudice plaintiff's claims under the Establishment Clause, the Equal Protection Clause, RFRA, and state law; granted summary judgment dismissing on the merits all claims based on plaintiff's inability to attend congregate services while he was confined to the

---

[2] The Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb to 2000bb-4, was invalidated by the Supreme Court in *City of Boerne v. Flores*, 521 U.S. 507 (1997), and Congress enacted RLUIPA to rectify the infirmity of RFRA. *See Pugh v. Goord*, 571 F.Supp.2d 477, 504 n.11 (S.D.N.Y. 2008).

SHU at Upstate; held that although summary judgment was not warranted on the merits of the Free Exercise and RLUIPA claims regarding demonstrative prayer in the recreation yard, qualified immunity barred plaintiff from recovering money damages on these claims; granted summary judgment dismissing the personal capacity claims against defendants Fischer and Leonard on the ground of lack of personal involvement; dismissed plaintiff's claims for equitable relief regarding demonstrative prayer in the recreation yard on the ground of mootness, because plaintiff was no longer housed at Clinton or Upstate; and denied the injunction motions.

On April 2, 2012, the Second Circuit dismissed plaintiff's appeal in part, finding that the following challenges to this Court's order lacked arguable bases in law or fact: (1) plaintiff's challenge to the dismissal of his claims for money damages arising out of events occurring while he was incarcerated at Clinton and Great Meadow; and (2) his challenge to dismissal of his claims based on his inability to attend congregate religious services while incarcerated in the SHU at Upstate. *Smith v. Artus*, 2d Cir. Case 11-4186, Doc. 32. The Second Circuit also appointed *pro bono* counsel for plaintiff and directed counsel to present argument as to the following: (1) whether this Court erred in finding that prison transfers mooted plaintiff's claims for injunctive and declaratory relief arising out of his experiences at Clinton and Great Meadow; and (2) whether this Court erred in dismissing plaintiff's state law claims with prejudice.

On April 4, 2013, after briefing and argument as directed in its April 2, 2012 order, the Second Circuit vacated this Court's judgment insofar as it granted summary judgment dismissing as moot plaintiff's claims for declaratory and injunctive relief related to engaging in demonstrative prayer in prison recreation yards under the Free Exercise Clause and RLUIPA. *Smith v. Artus*, 522 Fed.Appx. 82 (2d Cir. 2013). The Circuit Court wrote:

-4-

The District Court held that Smith's transfer to a new prison facility rendered moot his claims for injunctive and declaratory relief under the First Amendment and RLUIPA based on his former prison facility's prohibition against performing demonstrative prayer in the prison recreation yard. On appeal, Smith argues, and the defendants-appellees agree, that these claims are not moot because (1) Smith is similarly not allowed to engage in demonstrative prayer at Attica Correctional Facility, where he is currently incarcerated, and (2) there is a statewide policy banning inmate demonstrative prayer in prison recreation yards during recreation time. In light of this new information, which we recognize was not made available to the District Court, Smith's injunctive and declaratory relief claims are clearly not moot.

*Id*. at 84 (citation omitted). The Second Circuit added in a footnote:

In a previous order dated April 2, 2012, this Court dismissed portions of Smith's appeal relating to his claims for money damages under federal law and his inability to attend congregate religious services while incarcerated in the Special Housing Unit of Upstate Correctional Facility. The portions of the District Court decision addressing those issues remain undisturbed by this order.

*Id*. at 84, n.1. The Second Circuit also vacated this Court's dismissal with prejudice of plaintiff's state law claims, and remanded with instructions to permit plaintiff to renew his request for dismissal of his state law claims without prejudice or to withdraw his request to dismiss those claims. *Id*. at 85.

On August 16, 2013, through counsel, plaintiff filed the second amended complaint (Dkt. No. 137), which is now before the Court on this motion. In the first cause of action, plaintiff claims that defendants have violated his rights under RLUIPA. He states that defendants are imposing substantial burdens on his religious exercise by implementing and arbitrarily enforcing the policy prohibiting demonstrative prayer in the recreation yard, and that these substantial burdens are not imposed in furtherance of any compelling governmental interest, nor are they the least restrictive means of furthering any governmental interest. The second cause of action, under section 1983, claims that defendants' prohibition against engaging in demonstrative prayer in the

recreation yard infringes his First and Fourteenth Amendment right to the free exercise of religion. The third cause of action, also a section 1983 claim, alleges that, by intentionally placing restrictions on the exercise of Islam and thereby discriminating against plaintiff on the basis of his religion, defendants are depriving him of his Fourteenth Amendment right to equal protection. Plaintiff seeks injunctive and declaratory relief as well as money damages.

Thereafter, plaintiff moved to withdraw his state law claims without prejudice (Dkt. No. 139), and defendants moved to dismiss the personal capacity claims against them and to limit the relief requested (Dkt. No. 144). Defendants did not object to dismissal without prejudice of the state law claims, and in a Memorandum-Decision and Order dated November 8, 2013 (Dkt. No. 150), the Court granted this relief. The decision also terminated Rick Woods as a defendant and dismissed all claims against defendant Norman Bezio, DOCCS Director of Special Housing. Regarding the personal capacity claims, this Court wrote:

> As noted, the Second Circuit left undisturbed this Court's decision insofar as it dismissed on qualified immunity grounds the personal capacity claims asserted against the defendants in the amended and supplemental complaints. Thus, the Second Circuit effectively upheld this Court's ruling that, at the time of the conduct alleged in the amended and supplemental complaints, the right to engage in demonstrative prayer in prison recreation yards was not clearly established. Under the law of the case doctrine, this ruling must be applied to all personal capacity claims asserted in the second amended complaint alleging denial of the right to engage in demonstrative prayer in the yards, insofar as those claims are based on events occurring during the time period alleged in the amended and supplemental complaints. The question of whether the rights in issue became clearly established at some time after the conduct alleged in the amended and supplemental complaints remains open. Therefore, plaintiff may still assert in the second amended complaint personal capacity claims based on events occurring subsequent to those alleged in the amended and supplemental complaints. Under the circumstances alleged in the second amended complaint, the claims against the defendants newly added in the second amended complaint – Cheryl Morris, Jeff McKoy, and Anthony Annucci – are also subject to partial dismissal based on the law of the case, *i.e.*, that the right to engage in demonstrative prayer in prison recreation yards

-6-

was not clearly established as of July 18, 2008. Thus, the law of the case doctrine establishes that all defendants are protected by qualified immunity from personal capacity claims alleging denial of the right to engage in demonstrative prayer in the yards, insofar as those claims are based on events occurring prior to July 18, 2008.

The Second Circuit decision also left undisturbed this Court's dismissal of the personal capacity claims against defendants Fischer and Leonard on the ground of lack of personal involvement. Again, this ruling applies only to the events occurring during the time period which is the subject of the amended and supplemental complaints. Application of the law of the case doctrine means that personal capacity claims against Fischer and Leonard based on events occurring prior to July 18, 2008 are barred due to lack of personal involvement, as well as qualified immunity.

(Footnote omitted.) Accordingly, the Court granted defendants' motion for partial dismissal of the second amended complaint only to the extent of dismissing all personal capacity claims alleging denial of the right to engage in demonstrative prayer in the yards, insofar as those claims are based on events occurring prior to July 18, 2008.

Defendants now move (Dkt. No. 177) for summary judgment dismissing the second amended complaint. Defendants argue that the second amended complaint must be dismissed because plaintiff's claims for injunctive and declaratory relief under the First Amendment Free Exercise Clause, RLUIPA, and the Equal Protection Clause lack merit as a matter of law. Defendants further argue that they are entitled to qualified immunity from civil damages for all allegations accruing after July 18, 2008 and that all claims against defendants Annucci, Fischer, Morris, Leonard, McKoy and Perlman must be dismissed as a matter of law due to lack of personal involvement.

## FACTS

Plaintiff is a practicing Muslim of the Sunni branch of Islam. In an affidavit, plaintiff

explains the significance of prayer in his faith. He further explains that Salaah, the formal prayer, consists of both internal and external actions. The external actions, or bodily postures, include obligatory acts such as standing, bowing, prostration, and sitting in a kneeling position. These acts are integral to the validity of Salaah, such that omitting them or choosing not to do them invalidates the Salaah. He adds that the obligation of Salaah requires demonstrative prayer at five fixed time-frames throughout the day – dawn, early afternoon, late afternoon, post-sunset, and evening – determined by the location of the sun. Plaintiff states that he "cannot simply 'reschedule' his prayer by praying at a later time and that the "entire window for [his] prayer usually occurs while [he is] in the recreation yard." He adds that he cannot meet his religious obligations if he cannot pray at the specified times throughout the day or cannot perform the specified demonstrative actions during prayer.

DOCCS Directive 4202, entitled Religious Programs and Practices, states that individual demonstrative prayer is only allowed in the privacy of an inmate's own living quarters and in spaces designated as religious areas by the superintendent. Directive 4202 also states that congregate or group prayer may only occur in designated religious areas during a religious service or during other times authorized by the superintendent.

According to defendants, plaintiff is able to meet the tenets of his religion under the current policy. They state that plaintiff is permitted to pray in his cell or in a designated religious area after recreation time; that given the time frame in which Muslims must perform prayers, there is ample time to return to their cell before the next scheduled prayer; that even if the inmate was unable to return to his cell before the next scheduled prayer, he could pray in the yard in a quiet manner; and that this alternative form of prayer is an acceptable method of meeting the

tenets of the Islamic religion, so long as it occurs before the next scheduled prayer. In support of

this position, defendants rely on a declaration from Imam Mohammad S. Ahmed, who is

employed by DOCCS as a Ministerial Programs Coordinator. Imam Ahmed explains that an

Imam is an Islamic leadership position; that as an Imam he leads prayer in the Muslim

community, where he also worships; that in this role he is an authority on Islam; and that he

assists with the training of chaplains in DOCCS. Imam Ahmed declares:

> Ritual prayer, Salaat, is one of the five pillars of Islam.[3]
>
> Salaat is obligatory prayer worship and must be performed five times per day at prescribed times. These five times are: dawn (Fajr), immediately after noon (Dhuhr), mid-afternoon ('Asr), sunset (Maghrib), and early night (Isha').
> ***
> Islam requires that prayers also be performed in a specific manner.
>
> Salaat calls for Muslims to recite verses from the Qur'an, accompanied by various bodily postures, including facing Mecca, standing, raising hands, bowing, kneeling, prostrating, sitting, and touching one's forehead to the ground.
>
> If the Fajr prayer is missed unintentionally, such as due to oversleeping, it is common practice among Muslims to make up the prayer as soon as it is rcmembered or as soon as one is able to do so. This is known as Qadaa.
>
> Islam's obligation to the five prayers is such that intentionally missing one of the five prayers disqualifies that person as a Muslim, making him a nonbeliever within the Islamic faith.
>
> If a prayer cannot be performed in the prescribed demonstrative manner, Islam requires that the prayer take place nonetheless, even if in a less demonstrative manner.
>
> In the prison setting, if a Muslim prisoner is unable to pray demonstratively, he can make up this prayer later in the day, so long as it is within the allowable time before the next scheduled prayer.

---

[3] Plaintiff spells the formal prayer "Salaah," whereas Imam Ahmed spells it "Salaat." Except when quoting Imam Ahmed, the Court adopts the spelling used in the second amended complaint.

Furthermore, if the prayer has to be performed with time constraints, Islam allows a Muslim to pray in a more restricted, less demonstrative manner, so long as the prayer can still occur within the prescribed time period.

For example, a Muslim who is unable to pray demonstratively can pray by sitting quietly, raising his arm to his shoulder level, slightly lean forward and bowing his head in the required sequences.

(Paragraph numbering omitted.)

Plaintiff states that he disagrees with Imam Ahmed's opinion that he can meet his religious obligations by praying later in the day or engaging in more restricted prayer, including introspective prayer or with prayer with limited movement. In his affidavit in opposition to the motion, plaintiff states:

While I can pray demonstratively in my own cell, I am not able to meet my religious obligations by simply praying in my cell or another religious area after recreation time. This is because there is a short window during which I must pray. I cannot simply "reschedule" that prayer by praying at a later time. The entire window for my prayer usually occurs while I am in the recreation yard. Therefore, there is not possible for me to return to my cell and pray after recreation period is over.

Similarly, I am not able to meet my religious obligations by engaging in more restricted prayer, including introspective prayer or with prayer with limited movement. As Imam Ahmed recognizes, there are certain exceptions to this rule. However, I am not subject to any such exceptions that would make it permissible to make up a prayer at a later time. For example, an exception would exist if I was unable to perform Salaah due to a physical injury, or if I was under coercion or had a genuine fear that my life was in danger. My incarceration does not qualify under any of the exceptions, and I disagree with Imam Ahmed's opinion that the less demonstrative manner suffices for my prayer.

Therefore, I cannot meet my religious obligations under the current DOCCS policy.

(Paragraph numbering omitted.)

Plaintiff continues: "[W]hen the recreation period overlaps with Salaah, I make every

-10-

effort to pray Salaah in the recreation yard." According to plaintiff, whether or not he is permitted to pray in the recreation yard has depended on the individual facility and the individual guards who oversee the yard. Between December 2002 and September 2005, he was housed at Sing Sing Correctional Facility ("Sing Sing"), where he was allowed to pray individually in the recreation yard whenever his recreation time corresponded with the prescribed time. Other Muslim inmates also prayed in the yard individually; when one finished praying the next began. It appears that the reason for this was that it was their understanding that congregate prayer was not permitted in the recreation yard. Defendant Fischer was the Superintendent at Sing Sing during this time. Defendants state that they were not aware of inmates praying demonstratively in the yard at Sing Sing.

In September 2005, plaintiff was moved to Clinton. Plaintiff avers that when he arrived at Clinton, he was told by other inmates that he would not be permitted to pray in the yard; that on May 2, 2007, he was told that he and other Muslim inmates would be allowed to pray in the recreation yard, one at a time; that beginning in late June 2007, he was no longer permitted to pray in the recreation yard; and that he was told this prohibition arose from a memo written by DOCCS Commissioner Anthony Annucci. According to plaintiff, if he chose to stay in his cell in order to pray, rather than attend the recreation period, he would miss the opportunity to use the phones, to exercise, to socialize, and to shower in the summer. Plaintiff states that at some point, Clinton offered a "go-back," when inmates could return early to their cells; that sometimes the go-back occurred after the designated prayer time or was cancelled; and that inmates were not permitted to return to the yard following a go-back. Defendants state they were not aware of inmates praying demonstratively in the yard at Clinton.

-11-

Following a short transfer to Upstate, a Special Housing Unit, in late 2007 and early 2008, plaintiff was placed at Great Meadow, where, plaintiff states, he was not permitted to pray demonstratively in the recreation yard. In January 2009, he was transferred to Coxsackie Correctional Facility ("Coxsackie"). Plaintiff states that, initially, he was not permitted to pray in the recreation yard, but eventually he and other Muslims were permitted to pray individually at the side of the yard so long as they did not interfere with other inmates' activities in the yard. In March 2011, plaintiff was moved to Auburn Correctional Facility ("Auburn"), where, plaintiff alleges, he and the other Muslim inmates were allowed to go to the multipurpose chapel area at beginning of the afternoon recreation period in order to pray, after which they were able to join the recreation period. During evening recreation period, he states, he was allowed to leave the yard and go to the mess hall to pray with other Muslims, and then return to the recreation yard. He says he was also permitted to pray at the side of the recreation yard or near a recreation yard table or bench.

In October 2012, plaintiff was transferred to Attica Correctional Facility ("Attica"). Plaintiff states that Attica has five separate recreation yards; that at some of the recreation yards Muslims were permitted to engage in demonstrative prayer while at some (the A- and C-block yards) they were not. Defendants state that Attica has a once-per-day designated "go back" period, whereby inmates may return to their cells from the recreation yard under the supervision of staff at a predetermined time, thus permitting them to engage in demonstrative prayer in their cells. Defendants add that providing additional escorts to and from cells during the recreation period would require hiring new staff at an approximate cost of $700,000 per year at Attica alone. According to plaintiff, on many occasions the go-back period at Attica was not offered until after

the designated prayer time had elapsed.

On March 9, 2015, plaintiff was transferred to Cayuga Correctional Facility. He states: "I understand from discussing with the Imam that, here, inmates are permitted to pray in the yard."

Plaintiff states that, at Clinton, Great Meadow, and in A- and C-block yards at Attica, guards told him that if he prayed in the yard he would be charged with a disciplinary violation, which could result in cell confinement, lost privileges, removal from his work program, a permanent mark on his institutional record, loss of good time allowances, a negative file review at the parole board, and denial of favorable conditions such as honor block or transfer to more favorable facilities. He adds that the facilities at which he was not permitted to pray in the recreation yard offered no alternative accommodations permitting him to pray in accordance with his religion.

Defendants rely on affidavits from corrections officials to the effect that DOCCS promulgated Directive 4202 due to safety and security concerns; that permitting demonstrative prayer would negatively impact the safety and security of the DOCCS facilities; that recreation yards are areas where inmates have the most freedom and contact with other inmates; that for this reason, unusual incidents such as serious fights and assaults typically occur there; and that during a typical recreation period, there are hundreds of inmates in the yard, significantly outnumbering the corrections officers. Defendants also state that DOCCS has identified religious groups as a potential cover for violent gang members; that demonstrative prayer would increase the possibility of gang violence in the recreation yard; that if an incident occurred involving a member of a certain faith, other inmates of the same faith, including potential violent gang members, might involve themselves in the incident to protect someone from their group; and that

-13-

rapid escalation of an incident in the recreation yard would place staff and other inmates at serious risk of physical injury or death, threaten the facility's overall security, and possibly create an opportunity for an inmate to attempt to escape or take over the prison. Defendants add that demonstrative prayer in the yard negatively impacts staff's ability to control inmates; that while an inmate is engaged in demonstrative prayer in the recreation yard, he is likely to ignore direct orders from staff; and that an inmate praying demonstratively may view the interruption as an insult to his religion, leading to conflict between staff and the inmate. Further, an inmate praying demonstratively is also in a vulnerable position and more susceptible to an attack, which will require staff members to devote greater attention to the praying inmate. Defendants also state that, if a single inmate is allowed to pray demonstratively, it will lead to groups of inmates of all different faiths praying in the yard. They add that the Muslim population of DOCCS' 17 maximum security prisons is 13%.

Plaintiff states that, in his experience engaging in demonstrative prayer in the recreation yard at five different facilities, he and the other Muslim inmates conducted their prayers peacefully, and such prayer has never impacted the safety and security of those facilities. He does not know of any altercations, incidents, or violence resulting from demonstrative prayer by him or any other inmate in the recreation yard. Plaintiff further states: individual demonstrative prayer does not provide a cover for gang activity; under yard rules, gang members can and do congregate already; demonstrative prayer is no different from many other activities permitted in the yard; in fact it is "not at all violent or aggressive like the sporting activities that are permitted"; and that it is possible for inmates to engage in individual demonstrative prayer in the yard without incident.

**STANDARD ON SUMMARY JUDGMENT**

-14-

A party moving for summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the burden shifts to the non-movant to adduce evidence establishing the existence of an issue of material fact. *See Linares v. McLaughlin*, 423 Fed.Appx. 84, 86 (2d Cir. 2011). If the non-movant fails to make such a showing, the movant is entitled to summary judgment. When deciding a summary judgment motion, the court must "resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citation omitted). Conclusory statements or mere allegations, however, are not sufficient to defeat a summary judgment motion. *Id.* Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## FIRST AMENDMENT – FREE EXERCISE OF RELIGION

Defendants seek summary judgment dismissing plaintiff's claims for injunctive and declaratory relief under the First Amendment Free Exercise Clause. It is well established that, although incarceration brings about the necessary withdrawal or limitation of many privileges and rights, "a prison inmate retains those First Amendment Rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Thus, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). When balancing an inmate's First Amendment rights against legitimate governmental interests, it is appropriate to consider the

-15-

extent of the burden placed by a regulation on those rights. *See Turner*, 482 U.S. at 88 (citing

*Pell*, 417 U.S. at 824). "To ensure that courts afford appropriate deference to prison officials, we

have determined that prison regulations alleged to infringe constitutional rights are judged under a

'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of

fundamental constitutional rights." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987);

*Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir.1990). As the Second Circuit recently stated:

> To prevail on a First Amendment claim, a plaintiff must show that he has a
> sincerely held religious belief, that it was substantially burdened, and that
> defendants' conduct was not reasonably related to some legitimate penological
> interest. See *Holland v. Goord*, 758 F.3d 215, 220-23 (2d Cir. 2014); *Ford* [*v.
> McGinnis*, 352 F.3d 582, 588-94 (2d Cir. 2003)].

*Barnes v. Furman*, 2015 WL 6216534, at *3 (2d Cir. Oct. 22, 2015) (footnote omitted). The

*Barnes* court added in a footnote after the citation to *Ford*: "We have not decided whether the

substantial burden test remains viable in our Circuit following *Employment Division v. Smith*, 494

U.S. 872 (1990), but we need not decide the issue here because defendants have not contested that

Barnes satisfies this element[.]" 2015 WL 6216534, at *3, n.3 (citing *Holland*, 758 F.3d at 221);

*accord Ford*, 352 F.3d at 592-93.

For purposes of the instant motion, defendants do not dispute that plaintiff has a sincerely

held religious belief. *See Ford* 352 F.3d 582, 590-91 ("The opinions of the DOCS religious

authorities cannot trump the plaintiff's sincere and religious belief."). Defendants do, however,

argue that plaintiff cannot show a substantial burden, and that, in any event, the prohibition is

reasonably related to a legitimate penological interest.

**Substantial burden**

As noted above, "[i]t has not been decided in this Circuit whether, to state a claim under

-16-

the First Amendment's Free Exercise Clause, a 'prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.'" *Holland*, 758 F.3d at 220 (quoting *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006); citing *Ford*, 352 F.3d at 592)); *see also Washington v. Gonyea*, 538 F.App'x 23, 26 (2d Cir. 2013) (applying substantial burden requirement; stating "the contours of the burden standard are not precisely drawn"). In the absence of guidance from a higher court, this Court applies the traditional formulation that, to prevail on a First Amendment claim, an inmate must show that he has a sincerely held religious belief, that it was substantially burdened, and that defendants' conduct was not reasonably related to some legitimate penological interest. *See Barnes*, 2015 WL 6216534, at *3; *Holland*, 758 F.3d at 221; *Ford*, 352 F.3d at 592. Therefore, the Court turns to consider whether defendants here are entitled to summary judgment on the ground that Directive 4202 does not substantially burden plaintiff's First Amendment rights.

In support of their summary judgment motion, defendants ask the Court to hold that, as a matter of law, DOCCS' prohibition on demonstrative prayer in the yard is not a substantial burden on plaintiff's right to free exercise of his religion. They base this argument primarily on the opinion of Imam Ahman regarding the requirements of Salaah. In their Reply Memorandum of Law, defendants argue:

> The Affidavit of Mohammad S. Ahmed ... sets forth facts explaining that Plaintiff's right to practice his religion is not substantially burdened. This is because Plaintiff has other reasonable options available to him, such as the "go back" period, praying in his cell, attending weekly congregate services, and praying quietly in the recreation yard. *Withrow v. Bartlett*, 15 F. Supp.2d 292, 295-297 (S.D.N.Y. 1998). As set forth by Imam Ahmed, Plaintiff can meet the tenets of his religion under Directive 4202 and his rights to practice his religion are not substantially burdened.

In opposition, plaintiff states that, due to the short window of time when he may pray, it

-17-

"is not possible for [him] to return to [his] cell and pray after recreation period is over[,]" as Imam Ahmed suggests. Further, plaintiff states that he is not subject to the exceptions to the Salaah requirement advanced by Imam Ahmed, and adds: "My incarceration does not qualify under any of the exceptions, and I disagree with Imam Ahmed's opinion that the less demonstrative manner suffices for my prayer." Plaintiff concludes: "Therefore, I cannot meet my religious obligations under the current DOCCS policy."

On the present record, to hold that, as a matter of law, the DOCCS policy does not substantially burden plaintiff's religious practice would be to pass judgment on plaintiff's beliefs regarding the requirements of Salaah and to conclude that they are incorrect. The Second Circuit observes:

> Our founding principles require that courts resist the dangerous temptation to try to judge the significance of particular devotional obligations to an observant practitioner of faith. For, "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds."

*McEachin v. McGuinnis*, 357 F.3d 197, 201 (2d Cir. 2004) (quoting *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989)); *accord Ford*, 352 F.3d at 593 ("Applying the substantial burden test requires courts to distinguish important from unimportant religious beliefs, a task for which ... courts are particularly ill-suited."). As the Second Circuit stated in *Ford*, "a burdened practice need not be mandated by the adherent's religion in order to sustain a prisoner's free exercise claim." 352 F.3d at 593. The Court concludes that defendants are not entitled to summary judgment dismissing plaintiff's free exercise claim on the ground that plaintiff is wrong in believing that his Salaah obligations as he interprets them cannot be fulfilled in compliance with Directive 4202. The Court rejects defendants' argument that they are entitled to summary

-18-

judgment dismissing plaintiff's free exercise claim on the ground that the challenged policy does not impose a substantial burden on his sincerely held religious beliefs as a matter of law.

**Reasonably Related to Legitimate Penological Interests**

Defendants further argue that they have established that, as a matter of law, the DOCCS policy regarding demonstrative prayer in the recreation yard is reasonably related to legitimate penological interests. "Under the First Amendment ... a generally applicable policy will not be held to violate a plaintiff's right to free exercise of religion if that policy 'is reasonably related to legitimate penological interests.'" *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010) (quoting *O'Lone*, 482 U.S. at 349). In *Turner*, the Supreme Court laid out a four factor test to be applied by courts in determining the reasonableness of a prison regulation. 482 U.S. at 89-90. First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forth to justify it. *Id.* at 89. The second factor is "whether there are alternative means of exercising the right that remain open to prison inmates." *Id*. at 90. The third is "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* And fourth, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.*

Regarding the first element – whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forth to justify it – there is no question that prison safety and security are legitimate penological interests. On this record, however, the Court cannot determine as a matter of law whether there is a rational connection between these interests and the prohibition of demonstrative prayer in the yard. Defendants submit affidavits from officials setting forth substantial detail in support of their motion. Yet

plaintiff states that, at various times since his incarceration in 2002, he has been permitted to engage in demonstrative prayer in the yard at Sing Sing, Clinton, and Coxsackie, and that at Auburn, Muslim inmates were permitted to leave the yard to engage in demonstrative prayer in a designated location and then to return to the yard. He adds that, in his experience, he and other Muslim inmates conducted their prayers peacefully, and he does not know of any altercations, incidents, or violence resulting from demonstrative prayer by him or any other inmate in the recreation yard. The Court recognizes that plaintiff is not an expert in prison security, and that his allegation that he does not know of any incidents arising from demonstrative prayer is of limited probative value on this issue. Nevertheless, his allegations, based on first-hand experience, that various maximum-security prisons have permitted such activity in the yard without incident is sufficient to resist summary judgment on this issue.

Likewise, the record is not conclusive regarding the existence of reasonable alternatives to the prohibition of demonstrative prayer in the yard – such as allowing one inmate at a time to pray at the side of the yard or having prison staff accompany them as a group to pray in a designated area and then return to the yard – and the impact such possible alternatives may have on guards and other inmates. Therefore, questions of fact exist regarding the second, third, and fourth *Turner* factors. Defendants are not entitled to summary judgment dismissing plaintiff's free exercise claim based on a finding that, as a matter of law, their policy is reasonably related to legitimate penological interests.

### RLUIPA

RLUIPA imposes duties on prison officials that exceed those imposed by the First Amendment. *See generally Cutter v. Wilkinson*, 544 U.S. 709, 714-16 (2005). It protects

inmates "by providing that a government shall not 'impose a substantial burden' on the 'religious exercise' of inmates in certain institutions unless the government shows that the burden furthers a compelling governmental interest by the least restrictive means." *Salahuddin*, 467 F.3d at 273 (quoting RLUIPA, 42 U.S.C. § 2000cc–1(a)). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). Once a plaintiff shows that the government practice substantially burdens his religious exercise, the burden shifts to the government to demonstrate that the practice furthers a compelling governmental interest, and that the burden imposed on religion is the least restrictive means of achieving that interest. *See Jova v. Smith*, 582 F.3d 410, 415 (2d Cir. 2009) (citing 42 U.S.C. § 2000cc–2(b)). Having found that defendants are not entitled to summary judgment dismissing plaintiff's First Amendment claim, the Court also finds, for the same reasons, that defendants are not entitled to summary judgment dismissing his RLUIPA claim on this record. Thus, summary judgment dismissing plaintiff's RLUIPA claim is denied.

## EQUAL PROTECTION

Plaintiff's third cause of action is a section 1983 claim that defendants deprived him of his right to equal protection by intentionally placing restrictions on the exercise of Islam, thereby discriminating against him on the basis of his religion. In their first motion for summary judgment (Dkt. No. 87), directed to plaintiff's initial and supplemental complaints, defendants argued that plaintiff's equal protection claim in his initial pleadings should be dismissed because plaintiff failed to allege that a similarly situated group was treated differently, citing, *inter alia*, *City of Cleburne, Tex. v. Cleburne Living Center, Inc.*, 473 US 432, 439 (1985) (stating that the Equal Protection Clause "is essentially a direction that all persons similarly situated should be

treated alike").[4]  In opposition (Dkt. No. 91), plaintiff, still proceeding *pro se*, withdrew the

following claims in the amended complaint: First Amendment Establishment Clause; Equal

Protection Clause; RFRA; and all state law claims.  In the  Memorandum-Decision and Order

(Dkt. No. 112) dated September 30, 2010 granting defendants' motion for summary judgment,

this Court expressly dismissed those withdrawn claims with prejudice.[5]  As the Court reads the

brief on appeal, plaintiff's *pro bono* attorney argued that the Court erred in dismissing <u>all</u> of

plaintiff's claims for declaratory and injunctive relief, as well as in dismissing the state law

claims with prejudice.  *Smith v. Artus*, 2d Cir. Case 11-4186, Doc. 56.  In its decision on the

appeal, the Second Circuit concluded:

> For the foregoing reasons, the judgment of the District Court is VACATED
> in part, insofar as it dismissed as moot Smith's claims for declaratory and
> injunctive relief related to engaging in demonstrative prayer in prison
> recreation yards under the First Amendment Free Exercise Clause and
> RLUIPA, and VACATED in part, insofar as it dismissed Smith's state law
> claims with prejudice, and REMANDED with instructions to permit Smith to
> renew his request for dismissal of his state law claims without prejudice or to
> withdraw his request to dismiss those claims.

*Smith v. Artus*, 522 F.App'x 82, 86 (2d Cir. 2013).  Clearly, the only claims as to which the

---

[4] In support of their motion to dismiss the equal protection claim in the initial pleadings,
defendants pointed out (Dkt. No. 87):
> Plaintiff pleads that a DOCS employee informed him that "even a Christian who sits
> at a table and lifts his folded hands would be barred from said prayer if an officer
> can determine from such 'demonstrative' actions that he is engaged in religious
> prayer".  Further, plaintiff conceded that all demonstrative prayer, regardless of
> denomination, is prohibited at Great Meadow and Clinton Correctional Facilities....
> Consequently, plaintiff has failed to establish the existence of a similarly situated
> class that is treated differently.

(Citations to record omitted.)

[5] In a footnote to that decision, this Court stated: "The claims withdrawn lack merit because,
among other things: ... Plaintiff has not established that, for purposes of the Equal Protection clause, he
was treated any differently than any member of another religion."

Second Circuit vacated this Court's judgment are the First Amendment Free Exercise Clause, RLUIPA, and state law claims. Inasmuch as the relief plaintiff sought on appeal included vacatur of this Court's dismissal of the equal protection claim, the Second Circuit tacitly denied that relief, thus effectively resolving the issue against plaintiff.[6] Therefore, this Court's award of summary judgment dismissing the equal protection claim stands as law of the case. To hold otherwise would be to allow plaintiff to re-litigate an issue impliedly resolved by the Second Circuit's mandate. *See Brown v. City of Syracuse*, 673 F.3d 141, 147 (2d Cir. 2012). The equal protection cause of action is dismissed on this ground.

## MONEY DAMAGES

Defendants also seek summary judgment dismissing on qualified immunity grounds all claims against them for money damages. "Qualified immunity is a defense available only to individuals sued in their individual capacity." *Askins v. Doe No. 1*, 727 F.3d 248, 254 (2d Cir. 2013). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *accord Barnes v. Furman*, 2015 WL 6216534, at *3 (2d Cir. Oct. 22, 2015). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231. A government official's conduct violates clearly

---

[6] On the other hand, if plaintiff's brief on appeal is read as <u>not</u> challenging the dismissal with prejudice of the claims under the Equal Protection Clause, plaintiff has waived any challenge to the dismissal of the equal protection claim.

-23-

established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that his actions violate that right. *See Coollick v. Hughes*, 699 F.3d 211, 220 (2d Cir. 2012). "There is no need for a case on point, 'but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, __, 131 S.Ct. 2074, 2083 (2011)).

In its Memorandum-Decision and Order of September 30, 2010 (Dkt. No. 112), this Court discussed in detail the law relevant to an inmate's right to engage in demonstrative prayer in the yard. The Court defined the relevant qualified immunity inquiry as "whether it was objectively reasonable for defendants to believe that plaintiff did not have a clearly established constitutional right to conduct his Salaah prayer in a demonstrative manner in the recreation yard," and concluded that it "does not appear well established that an inmate has the right to pray demonstratively in the recreation yard." Thus, this Court held that "any claim for damages would be barred by the doctrine of qualified immunity even if ultimately plaintiff's First Amendment rights had been infringed" and dismissed all claims for civil damages against the individual defendants.

In its April 2, 2012 decision dismissing plaintiff's appeal in part, the Second Circuit dismissed plaintiff's challenge to district court's "dismissal of his claims for money damages arising out of alleged violations of his rights under the U.S. Constitution, [RLUIPA], and [RFRA] while he was incarcerated at Clinton and Great Meadow Correctional Facilities[.]" The Second Circuit based its dismissal of that portion of the appeal on the ground that "any such challenge lacks an arguable basis in law and fact." Moreover, in its April 4, 2013 decision in *Smith v. Artus*, 522 F.App'x 82, 84, n.1 (2d Cir. 2013), the Second Circuit stated: "In a previous order

-24-

dated April 2, 2012, this Court dismissed portions of Smith's appeal relating to his claims for money damages under federal law.... The portions of the District Court decision addressing those issues remain undisturbed by this order." This Court viewed that holding as law of the case and, in its November 8, 2013 Memorandum-Decision and Order (Dkt. No. 150), granted defendants' motion for partial dismissal of the second amended complaint to the extent of dismissing all claims for money damages based on defendants' actions prohibiting plaintiff from engaging in demonstrative prayer in the yard prior to July 18, 2008.

Defendants now argue that they are likewise entitled to qualified immunity protection from all claims for money damages based on conduct prohibiting plaintiff from engaging in demonstrative prayer in the yard after July 18, 2008. Defendants point out that the relevant language in the current version of Directive 4202 is identical to that in the earlier version submitted in support of the prior summary judgment motion, and assert that "a review of the case law in the Second Circuit establishes that Defendants could not reasonably have believed that there was a clearly established right to pray in the recreation yard." In response, plaintiff does not cite to any case law indicating that plaintiff's asserted right to demonstrative prayer in the yard was more clearly established after July 18, 2008 than it was before. This Court finds no significant development in Supreme Court or Court of Appeals case law bearing on this issue, and therefore its reasoning underlying the grant of qualified immunity in the September 30, 2010 Memorandum-Decision and Order (Dkt. No. 112) – upheld by the Second Circuit in its April 2, 2012 decision – applies to support the grant of qualified immunity now. Accordingly, defendants are entitled to qualified immunity protecting them from liability for civil damages for plaintiff's free exercise claims.

RLUIPA does not authorize claims for money damages against state officials acting in their official capacities and does not create a private right of action against them in their individual capacities. *See Sossamon v. Texas*, 131 S.Ct. 1651 (2011); *Washington v. Gonyea*, 731 F.3d 143, 144 (2d Cir. 2013). In any event, qualified immunity would protect defendants against such claims, for the same reasons as it protects them against the free exercise claims.

The Eleventh Amendment bars suits for money damages against state officials acting in their official capacities. *See Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit ... for money damages against state officials in their official capacities."). All DOCCS employees are state officials for the purposes of the Eleventh Amendment. *See Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); therefore the Eleventh Amendment bars all claims against them in their official capacities.

Accordingly, summary judgment is granted dismissing all claims for money damages against all defendants in their official and individual capacities.

## DECLARATORY AND INJUNCTIVE RELIEF

The Eleventh Amendment does not bar plaintiff's requests for prospective declaratory and injunctive relief against defendants in their official capacities. A plaintiff "may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *Clark v. DiNapoli*, 510 F. App'x 49, 51 (2d Cir. 2013) (quotation marks omitted). "A plaintiff may not use this doctrine to adjudicate the legality of past conduct." *Id*. (quoting *Papasan v. Allain*, 478 U.S. 265, 277 (1986)).

Plaintiff cannot state a claim for prospective declaratory and injunctive relief against the retired defendants, inasmuch as those defendants lack the authority to provide prospective relief. Thus, all claims are dismissed against Commissioner Fischer, Deputy Commissioner Perlman, Director Leonard, Superintendent Rock, Deputy Superintendent Turner, and Deputy Superintendent LaPolt. The Court has already terminated Rick Woods as a defendant and dismissed the claims against defendant Norman Bezio, DOCCS Director of Special Housing (Dkt. No. 150). All claims are dismissed against these defendants.

Defendants have not established as a matter of law that the following defendants are not proper defendants in plaintiff's claims for prospective declaratory and injunctive relief under the Free Exercise Clause and RLUIPA: Dale Artus, Superintendent of Attica Correctional Facility; Cheryl Morris, Director of Ministerial and Family Services; Jeff McKoy, Deputy Commissioner of Program Services of DOCCS; and Anthony Annucci, Acting Commissioner of DOCCS. The case will proceed on these claims against these defendants. All other claims are dismissed with prejudice.

## CONCLUSION

It is therefore

ORDERED that defendants' motion (Dkt. No. 177) for summary judgment is granted in part and denied in part; and it is further

ORDERED that summary judgment is denied as to plaintiff's claims in the second amended complaint (Dkt. No. 137) for prospective injunctive and declaratory relief against defendants Dale Artus, Cheryl Morris, Jeff McKoy, and Anthony Annucci; and it is further

ORDERED that all other claims and all other defendants in the second amended complaint

are dismissed with prejudice.

IT IS SO ORDERED.

December 22, 2015
Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge